1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
   Post Montgomery Center
3  One Montgomery Street, Suite 1800
   San Francisco, CA  94104
4  Telephone:  415/288-4545
   415/288-4534 (fax)
5  shawnw@rgrdlaw.com
        – and –
6  SAMUEL H. RUDMAN
   MARY K. BLASY (211262)
7  58 South Service Road, Suite 200
   Melville, NY  11747
8  Telephone:  631/367-7100
   631/367-1173 (fax)
9  srudman@rgrdlaw.com
   mblasy@rgrdlaw.com
10
   Attorneys for Plaintiff
11
   [Additional counsel appear on signature page.]
12
                    UNITED STATES DISTRICT COURT
13
                   NORTHERN DISTRICT OF CALIFORNIA
14

| | | |
|---|---|---|
| OKLAHOMA POLICE PENSION & RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| vs. | ) ) ) | |
| MAGNACHIP SEMICONDUCTOR CORPORATION, SANG PARK, TAE YOUNG HWANG, MARGARET SAKAI, R. DOUGLAS NORBY, ILBOK LEE, NADER TAVAKOLI, RANDAL KLEIN, MICHAEL ELKINS, AVENUE CAPITAL MANAGEMENT II, L.P., BARCLAYS CAPITAL INC., DEUTSCHE BANK SECURITIES INC., CITIGROUP GLOBAL MARKETS INC., UBS SECURITIES LLC and NEEDHAM & COMPANY, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | <u>DEMAND FOR JURY TRIAL</u> |

1      Plaintiff Oklahoma Police Pension & Retirement System ("Plaintiff"), individually and on

2 behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint

3 against defendants, alleges the following based upon personal knowledge as to Plaintiff and

4 Plaintiff's own acts, and upon information and belief as to all other matters based on the

5 investigation conducted by and through Plaintiff's attorneys, which included, among other things, a

6 review of Securities and Exchange Commission ("SEC") filings by MagnaChip Semiconductor

7 Corporation ("MagnaChip" or the "Company"), as well as media reports about the Company.

8 Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth

9 herein after a reasonable opportunity for discovery.

10                     **NATURE OF THE ACTION**

11      1.     This is a securities class action on behalf of all persons who purchased or otherwise

12 acquired the publicly traded securities of MagnaChip between February 1, 2012 and February 12,

13 2015, inclusive (the "Class Period"), including purchasers of MagnaChip common stock pursuant

14 and/or traceable to the Registration Statement and Prospectus issued in connection with

15 MagnaChip's February 6, 2013 follow-on public stock offering (the "2/13 Offering"), seeking to

16 pursue remedies under the Securities Exchange Act of 1934 (the "1934 Act") and the Securities Act

17 of 1933 (the "1933 Act").

18            **INTRODUCTION AND SUMMARY OF THE ACTION**

19      2.     MagnaChip is a South Korea-based designer and manufacturer of analog and mixed-

20 signal semiconductor products mainly for high-volume consumer, computer and communication

21 applications, which includes smart phones. One of the Company's major customers is Samsung.

22 MagnaChip sells its products to customers through a network of authorized agents and distributors

23 worldwide.

24      3.     During the Class Period, defendants issued materially false and misleading statements

25 regarding the Company's business, prospects, operations and financial results, and failed to disclose

26 the inadequacy of its internal controls and procedures over financial reporting. Specifically, the

27 Company failed to disclose that it was improperly recognizing revenues, resulting in its prior

28 financial statements overstating its revenues and earnings in 2011, 2012, and the first nine months of

2013.  The Company subsequently announced it would restate its results for 2011, 2012 and the first nine months of 2013, resulting in a total reversal of earnings by $142 million, wiping out 55% of its reported profits for those periods.  Defendants knew about these improper revenue recognition practices, but nevertheless touted inflated sales targets, earnings results, understated expenses and overstated profit, which did not reflect the true state of the Company.

4.     As a result of defendants' false statements, MagnaChip securities traded at artificially inflated prices during the Class Period, with its stock price reaching a high of $23.57 per share on October 21, 2013.

5.     With the price of MagnaChip common stock artificially inflated, defendant Avenue Capital Management II, L.P. ("Avenue Capital"), MagnaChip's controlling shareholder, which took it public in its March 2011 initial public stock offering ("IPO") and continued to own 53% of its common stock at the start of the Class Period, directed MagnaChip to undertake three registered follow-on stock offerings, which, along with its other open-market sales, allowed Avenue Capital to cash in by selling its MagnaChip stock to unsuspecting investors at fraud-inflated prices, including selling *all 7 million shares* sold in a registered follow-on stock offering on May 2, 2012 at $11.40 per share, receiving gross proceeds of *$79.8 million* (the "5/12 Offering"); selling *all 5.75 million shares* sold in the 2/13 Offering at $14.50 per share, receiving gross proceeds of *$83.375 million*; selling an additional *$33.5 million* worth of shares in open-market sales on August 1, 2013; and selling *all 1.7 million shares* sold in a registered follow-on stock offering on September 9, 2013 at $21.20 per share, receiving gross proceeds of *$36 million* (the "9/13 Offering").  In total, Avenue Capital sold more than 16.1 million MagnaChip shares during the Class Period at fraud-inflated prices, receiving $232.675 million in gross proceeds, *while disposing of approximately 80% of its MagnaChip holdings during the Class Period*.

6.     Based on defendants' false and misleading statements made to the market during the Class Period, MagnaChip was also able to secure the favorable corporate debt ratings needed to raise $225 million in a private debt placement conducted on July 15, 2013, and to register that debt for public sale through an exchange offer conducted on October 18, 2013.

7.   Following a January 2014 disclosure that it could not timely file its annual financial report for fiscal 2013, on March 11, 2014, MagnaChip announced that it would be restating its 2011, 2012 and 2013 financial results after concluding that it had "incorrectly recognized revenue on certain transactions."  The Company then stated that it "expect[ed] that the primary impact of the correction of prior revenue recognition errors [would] be to recognize revenue on certain transactions in the periods in which the distributor ship[ped] the products to the end customer rather than the periods in which the products [were] shipped to distributors."  Accordingly, MagnaChip stated that the "correction [was] not expected to impact revenue generated from the Company's non-distributor customers."

8.   It was not until February 2015 that the Company revealed how large its earnings restatement would be.  On February 12, 2015, after the market closed, MagnaChip filed its Annual Report on Form 10-K with the SEC for the fiscal year ended December 31, 2013, restating its financial results for fiscal years 2011, 2012, and the first three quarters of 2013, and finally disclosing the full extent of the restatement.  The restatement was purportedly caused by a host of accounting errors, including revenue recognition, cost of goods sold, inventory reserves, capitalization, and expense recognition and allocation, including related business practices for distributors, non-distributor customers and vendors.

9.   As a result of this news, MagnaChip's shares plummeted $7.50 per share to close at $7.52 per share on February 13, 2015, a one-day decline of nearly 50%.

10.   On March 17, 2015, MagnaChip disclosed that it would not be able to timely file its Annual Report on Form 10-K for the fiscal year ended December 31, 2014, "[b]ecause of the time and resources required to complete the 2013 Form 10-K and 2014 Forms 10-Q."  The Company further disclosed on April 6, 2015 that, as a result of its failure to make timely financial filings, the New York Stock Exchange ("NYSE") had notified it that it was not in compliance with listing requirements and was threatening to commence delisting procedures if the financial statements were not brought current.

11.   As a result of defendants' false statements, MagnaChip securities traded at artificially inflated prices during the Class Period.  However, after the above revelations seeped into the market,

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                    - 3 -

the Company's stock collapsed 68% from its Class Period high and causing economic harm and damages to class members.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of the 1933 Act [15 U.S.C. §§77k, 77l(a)(2) and 77o], and §§10(b) and 20(a) of the 1934 Act [15 U.S.C. §§78j(b) and 78t(a)] and SEC Rule 10b-5 [17 C.F.R. §240.10b-5] promulgated thereunder.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, §27 of the 1934 Act and §22 of the 1933 Act.

13.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because many of the acts and practices complained of herein occurred in substantial part in this District.  The Company maintains an office in this District and the Underwriter Defendants (as defined below) conducted the 2/13 Offering and the accompanying roadshow largely in this District.

14.     In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

15.     Plaintiff Oklahoma Police Pension & Retirement System ("Oklahoma Police") acquired MagnaChip securities as set forth in the attached certification and has been damaged thereby.  With assets in excess of $2 billion, Oklahoma Police is a defined benefit pension plan that provides more than 8,500 active and retired members with retirement, death and disability benefits. Oklahoma Police is based in Oklahoma City, Oklahoma and is overseen by a 13-member board of trustees.

16.     Defendant MagnaChip designs and manufactures analog and mixed-signal semiconductor products for high-volume consumer applications.  Though the Company's principal executive offices are located c/o MagnaChip Semiconductor S.A., 1, Allée Scheffer, L-2520 Luxembourg, Grand Duchy of Luxembourg, the Company is organized under the laws of the State of Delaware and maintains corporate offices in this District in Cupertino, California.  In 2009,

1  MagnaChip undertook reorganization under Chapter 11 of the United States Bankruptcy Code (the

2  "Bankruptcy Reorg").  As of January 31, 2015, the Company had more than 34 million shares of

3  common stock issued and outstanding, which trades on the NYSE, an efficient market, under the

4  ticker symbol "MX."

5          17.     Defendant Sang Park ("Park") was, at all relevant times until his "resignation" in May

6  2014, the Chairman of the MagnaChip Board of Directors (the "Board") and its Chief Executive

7  Officer ("CEO").  Defendant Park signed or authorized the signing of the false and misleading

8  Registration Statement (as defined below).

9          18.     Defendant Margaret Sakai ("Sakai") was, at all relevant times until her "resignation"

10 in March 2014, MagnaChip's Executive Vice President, Chief Financial Officer ("CFO") and

11 Principal Accounting Officer.  Defendant Sakai signed or authorized the signing of the false and

12 misleading Registration Statement.

13         19.     Defendant Tae Young Hwang ("Hwang") is, and at all relevant times was,

14 MagnaChip's President and Chief Operating Officer ("COO").

15         20.     Defendant R. Douglas Norby ("Norby") was, at all relevant times, a member of

16 MagnaChip's Board.  Norby has served as Non-Executive Chairman of the Board since May 2014.

17 Norby was the Chairman of the Audit Committee and a member of its Nominating and Corporate

18 Governance Committee.  Defendant Norby signed or authorized the signing of the false and

19 misleading Registration Statement.

20         21.     Defendant Ilbok Lee ("Lee") was, at all relevant times, a member of MagnaChip's

21 Board.  Lee was also a member of the Company's Audit Committee from March 2012 until

22 approximately April 2013.  Defendant Lee signed or authorized the signing of the false and

23 misleading Registration Statement.

24         22.     Defendant Nader Tavakoli ("Tavakoli") was, at all relevant times, a member of

25 MagnaChip's Board.  Tavakoli was a member of the Audit Committee.  Defendant Tavakoli signed

26 or authorized the signing of the false and misleading Registration Statement.

27         23.     Defendant Avenue Capital is a global investment management firm with its principal

28 executive offices located at 399 Park Avenue, New York, New York.  Avenue Capital was a holder

of a significant portion of MagnaChip's indebtedness outstanding prior to its 2009 Bankruptcy Reorg.  In connection with the Company's emergence from bankruptcy, Avenue Capital became MagnaChip's majority unitholder as a result of its participation in a rights offering in those proceedings.  During the Class Period, defendant Avenue Capital remained the majority shareholder of MagnaChip, owning as much as 70% of the Company's stock, and exercised the right to appoint a majority of the members to MagnaChip's Board.  In so doing, Avenue Capital placed certain of its own employees on the Board's key committees.

24.   Defendant Randal Klein ("Klein") was, at all relevant times, a member of MagnaChip's Board, becoming a director in November 2009.  Klein was also a member of MagnaChip's Audit Committee until March 2012.  At all relevant times, Klein was also an employee of Avenue Capital, serving as a Portfolio Manager and a Senior Vice President of certain U.S. funds. Defendant Klein signed or authorized the signing of the false and misleading Registration Statement.

25.   Defendant Michael Elkins ("Elkins") was, at all relevant times, a member of MagnaChip's Board, becoming a director in November 2009.  Elkins was also a member of MagnaChip's Audit Committee from approximately April 2013 through the end of the Class Period. Elkins was Chairman of MagnaChip's Compensation Committee from approximately April 2013 through the end of the Class Period.  Elkins was also an employee of Avenue Capital, serving as a Portfolio Manager of certain U.S. funds.  Elkins remained employed by Avenue Capital until December 31, 2012, when he became a consultant to Avenue Capital.  Defendant Elkins signed or authorized the signing of the false and misleading Registration Statement.

26.   The defendants referenced above in ¶¶17-19 are sometimes referred to herein as the "Officer Defendants."  The defendants referenced above in ¶¶17-18, 20-22 and 24-25 all signed the false and misleading Registration Statement and are sometimes referred to herein as the "1933 Act Defendants."  The defendants referred to above in ¶¶16-19 and 23 are all sometimes referred to herein as the "1934 Act Defendants."

27.   The Officer Defendants made, or caused to be made, false statements which caused the price of MagnaChip securities to be artificially inflated during the Class Period.  The Officer

Defendants, because of their positions with the Company, possessed the power and authority to control the contents of MagnaChip's quarterly reports, shareholder letters, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. They also participated in conference calls with securities analysts and investors in which they made materially misleading statements and omissions and held themselves out to be knowledgeable on the topics which they discussed. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Officer Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Officer Defendants are liable for the false and misleading statements pleaded herein.

28.     Defendants Barclays Capital Inc., Deutsche Bank Securities Inc., Citigroup Global Markets Inc., UBS Securities LLC and Needham & Company, LLC, investment banking firms that acted as underwriters of the 2/13 Offering, helping to draft and disseminate the offering documents, are collectively referred to herein as the "Underwriter Defendants." In addition to underwriting the 2/13 Offering, the Underwriter Defendants also underwrote MagnaChip's IPO in March 2011, the 5/12 Offering and the 9/13 Offering. Pursuant to the 1933 Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement used to conduct the 2/13 Offering as follows:

(a)     The Underwriter Defendants are investment banking houses which specialize, *inter alia*, in underwriting public offerings of securities. They served as the underwriters of the 2/13 Offering and shared more than $3.44 million in fees collectively. The Underwriter Defendants determined that in return for their share of the 2/13 Offering proceeds, they were willing to

merchandize MagnaChip stock in the 2/13 Offering.  The Underwriter Defendants arranged a multi-city roadshow prior to the 2/13 Offering during which they, and the Officer Defendants, met with potential investors and presented highly favorable information about the Company, its operations, and its financial prospects.

(b)   The Underwriter Defendants also demanded and obtained an agreement from MagnaChip that MagnaChip would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.  They also made certain that MagnaChip had purchased millions of dollars in directors' and officers' liability insurance.

(c)   Representatives of the Underwriter Defendants also assisted MagnaChip and the Officer Defendants in planning the 2/13 Offering, and purportedly conducted an adequate and reasonable investigation into the business and operations of MagnaChip, an undertaking known as a "due diligence" investigation.  The due diligence investigation was required of the Underwriter Defendants in order to engage in the 2/13 Offering.  During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning MagnaChip's operations and financial prospects.

(d)   In addition to availing themselves of virtually unbridled access to internal corporate documents all the way back to March of 2010 when they began preparing to take MagnaChip public in the IPO, agents of the Underwriter Defendants met with MagnaChip's lawyers, management and top executives and engaged in "drafting sessions" between at least January and February 2013 related to the 2/13 Offering.  During these sessions, understandings were reached as to: (i) the strategy to best accomplish the 2/13 Offering; (ii) the terms of the 2/13 Offering, including the price at which MagnaChip stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about MagnaChip would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration

Statement.  As a result of those constant contacts and communications between the Underwriter Defendants' representatives and MagnaChip management and top executives, the Underwriter Defendants were negligent in not knowing of MagnaChip's existing problems as detailed herein.

(e)      The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with offers and sales thereof, including to Plaintiff and the Class (as defined below).

## BACKGROUND

29.      MagnaChip designs and manufactures analog and mixed-signal semiconductor products for high-volume consumer applications, including LCD, LED and 3D televisions, smartphones, desktop PCs and tablet PCs.

30.      The Company sells its products and services through a direct sales force, as well as through a network of authorized agents and distributors in the United States, Korea, Taiwan, China, Japan, Hong Kong and Macau.

31.      The Company's manufacturing operations consist of three fabrication facilities in Cheongju and Gumi, Korea.

32.      The Company's administration, sales and marketing, and research and development functions are run out of its facilities in Seoul, Korea, and Cupertino, California.

33.      MagnaChip began operations in 2004 and subsequently reported significant annual losses.  After accumulating a deficit of $964.8 million, on June 12, 2009, MagnaChip commenced the Bankruptcy Reorg in the United States.  MagnaChip's Bankruptcy Reorg was completed on November 9, 2009.

34.      While all prior equity ownership interests were eliminated in the Bankruptcy Reorg, some of Avenue Capital's pre-petition debt was converted to common stock, with Avenue Capital becoming MagnaChip's majority shareholder, owning 70.3% of the Company's shares.

35.      On March 10, 2011, the Company completed its IPO at $14 per share and listed its common stock on the NYSE.  Avenue Capital continued to control MagnaChip post-IPO.  As conceded in the IPO prospectus, Avenue Capital was entitled to have "three designees serving as

1   members of [the Company's] seven-member board of directors," and "[t]herefore, Avenue [Capital]

2   [would] continue to have significant influence over [MagnaChip's] affairs for the foreseeable

3   future."   As of February 1, 2012, Avenue Capital owned 20,789,539 shares of MagnaChip common

4   stock, controlling 55.5% of its voting stock.

**THE MATERIALLY FALSE AND MISLEADING
REGISTRATION STATEMENT**

7           36.      On or about April 13, 2012, MagnaChip filed with the SEC a Form S-3 registration

statement and prospectus using a "shelf" registration, or continuous offering process.   Under the

shelf registration, MagnaChip would sell securities described in various future prospectus

supplements in one or more offerings.   The prospectus supplements would form part of the

registration statement for each offering.  The securities were to be issued by MagnaChip.  The Form

S-3 expressly incorporated by reference certain filings MagnaChip had previously made with the

SEC and all future filings until any offering conducted under the shelf registration statement was

completed.

           37.      The SEC declared the shelf registration statement effective on April 26, 2012.  On

February 6, 2013, MagnaChip priced the 2/13 Offering at $14.50 per share and filed its final

Prospectus, which formed part of the Registration Statement, pursuant to which Avenue Capital sold

5.75 million shares of common stock to the public (including exercising the underwriters'

overallotment).

           38.      The Registration Statement, including the materials incorporated therein by reference

(which now expressly incorporated by reference MagnaChip's Annual Report on Form 10-K for the

year ended December 31, 2011, filed with the SEC on March 8, 2012), and the final Prospectus,

which included the Company's 2011 and 2012 financial statements (collectively, the "Registration

Statement"), were negligently prepared and, as a result, contained untrue statements of material fact

or omitted to state other facts necessary to make the statements made not misleading and were not

prepared in accordance with the rules and regulations governing their preparation.   The Company

has now admitted that its financial statements for 2011 and 2012, which were included in the

Registration Statement, were materially false and misleading and must be restated.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                    - 10 -

39.     Pursuant to Item 303 of Regulation S-K [17 C.F.R. §229.303], and the SEC's related interpretive releases thereto, issuers are required to disclose events or uncertainties, including any known trends, that have had or are reasonably likely to cause the registrant's financial information not to be indicative of future operating results.  This is particularly true for issuers utilizing shelf registration statements, which require continuous updating and incorporate those continuous disclosures into the registration statement.  At the time of the 2/13 Offering, the Company's financial statements were materially overstated.

40.     The 2/13 Offering was successful for the Company, Avenue Capital and the Underwriter Defendants.  All 5.75 million shares of MagnaChip common stock were sold to the public at $14.50 per share, raising $83.375 million in gross proceeds for Avenue Capital.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

41.     The 1934 Act Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about MagnaChip.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of MagnaChip securities was a success, as it: (i) deceived the investing public regarding MagnaChip's prospects and business; (ii) artificially inflated the prices of MagnaChip securities; (iii) permitted MagnaChip to sell for Avenue Capital $232.675 million worth of shares in the three Class Period offerings; (iv) permitted MagnaChip to raise more than $225 million in a July 2013 private debt placement and register that debt for resale in October 2013; (v) facilitated the sale of $33.5 million worth of MagnaChip common stock by defendant Avenue Capital on the open market at fraud-inflated prices during the Class Period on August 1, 2013; and (vi) caused Plaintiff and other members of the Class to purchase MagnaChip securities at fraud-inflated prices throughout the Class Period.

## DEFENDANTS' MATERIALLY FALSE AND
## MISLEADING STATEMENTS DURING THE CLASS PERIOD

42.     The Class Period starts on February 1, 2012.  On that day, MagnaChip issued a press release announcing its fourth quarter and full year 2011 financial results for the period ended December 31, 2011.  In addition to reporting net income of $23.7 million, or $0.61 diluted earnings per share ("EPS"), and revenue of $180.8 million for the fourth quarter of 2011, and net income of

$21.8 million, or $0.55 diluted EPS, and revenue of $772.8 million for the full year ended December 31, 2011, the release quoted defendant Park, in pertinent part, as follows:

> "I am very pleased that for the fourth consecutive quarter we again met our quarterly revenue guidance in what has been a challenging year for the semiconductor industry. Our successful track record is a result of outstanding relationships with major blue chip customers and a growing list of design-wins targeted at high-growth, high-margin applications . . . . Smartphones, tablet PCs, AMOLED displays and Ultrabooks are some examples of growth drivers for MagnaChip in 2012 as well as our rapidly expanding customer base and new product introductions for the power solutions segment. In addition, our recent announcement of the Dawin Electronics Co. Ltd. acquisition strengthens our competitive position in the fast growing IGBT power module business. Looking ahead, we believe there are indications that the first quarter of 2012 could be the bottom of our revenue downturn based on the strength of orders for new products coming from our smartphone and tablet PC customers. Our goal is to grow the business, deliver solid financial performance and to enhance shareholder value in the years to come."

43.     Later that evening, MagnaChip conducted a conference call with investors during which defendants Park and Sakai made additional positive statements about the Company's business and financial prospects. Defendant Park opened the call, stating in pertinent part as follows:

> I am very pleased that, for the fourth consecutive quarter, we again met our quarterly revenue guidance in what has been a challenging year for the semiconductor industry. We delivered fourth-quarter revenue of $180.8 million, and gross margin of 28.5%, above the mid-point of our guidance range, and slightly better than street consensus. Our successful track record is a result of outstanding relationship [sic] with our major blue-chip customers, and growing list of design wins targeted at high-growth and . . . high-margin applications. Smartphones, tablet PCs, AMOLED displays, and Ultrabooks are some examples of growth driver for MagnaChip in 2012, as well as our rapidly expanding customer base and new product introduction for the power solutions segment.

44.     On these statements, the price of MagnaChip common stock increased $0.66 per share, to close at $10.82 per share on February 2, 2012, on unusually high trading volume of more than 700,000 shares traded.

45.     On March 8, 2012, MagnaChip filed with the SEC its Annual Report on Form 10-K for the year ended December 31, 2011. The Form 10-K included the same results previously reported in the Company's February 1, 2012 press release and was signed by defendants Park, Sakai, Elkins, Klein, Lee, Norby and Tavakoli. The Form 10-K further attested that the financial information was accurate and that any material changes to the Company's internal control over financial reporting had been reported. The Form 10-K was certified by defendants Park and Sakai pursuant to the Sarbanes Oxley Act of 2002.

46.     On April 25, 2012, MagnaChip issued a press release announcing its first quarter 2012 financial results.  The Company reported net income of $15.3 million, or $0.40 diluted EPS, and revenue of $177.0 million for the first quarter ended March 31, 2012.  The release stated in part:

> "I am very pleased that since going public in March 2011, we have met our revenue and gross margin guidance each quarter for 5 consecutive quarters in what has been a very challenging period for the industry," said Sang Park, MagnaChip's Chairman and Chief Executive Officer.  "As our Q2 guidance suggests, the first quarter of 2012 was indeed our bottom during this current semiconductor downturn. We have been seeing renewed customer order strength and wafer loading since early March as a result of increased demand from smartphone and tablet PC customers and expect this trend to continue into the second half of this year. In anticipation of this growing demand, we have allocated additional fab capacity to support expansion."

47.     On May 15, 2012, MagnaChip filed with the SEC its Form 10-Q for the first quarter of 2012.  The Form 10-Q included the same results previously reported in the Company's April 25, 2012  press release and contained signed certifications by defendants Park and Sakai.  The Form 10-Q further attested that the financial information was accurate and disclosed any material changes to the Company's internal control over financial reporting.

48.     On August 2, 2012, MagnaChip issued a press release announcing its second quarter 2012 financial results.  The Company reported net income of $4.3 million, or $0.12 diluted EPS, and revenue of $202.6 million for the second quarter ended June 30, 2012.  The release stated in part:

> "I am very pleased that the second quarter represented our sixth consecutive quarter of meeting revenue and gross margin guidance in what is being described as a challenging macro environment.  Our foundry services and power solutions segments saw greater than anticipated order strength and revenue growth during the quarter," said Sang Park, MagnaChip Chairman and CEO.  "This is possible because of our alignment with strategic customers in high growth markets – including the leading smart phone and tablet PC makers.  During the last three years, we have made solid progress shifting our customer base and refocusing our product portfolio.  Our direct and indirect revenue from the top two smart phone/tablet PC makers has almost tripled in the first half of this year compared to the first half of 2010."

49.     On August 8, 2012, MagnaChip filed with the SEC its Form 10-Q for the second quarter of 2012.  The Form 10-Q included the same results previously reported in the Company's August 2, 2012 press release and contained signed certifications by defendants Park and Sakai.  The Form 10-Q further attested that the financial information was accurate and disclosed any material changes to the Company's internal control over financial reporting.

50.     On November 1, 2012, MagnaChip issued a press release announcing its third quarter 2012 financial results.  The Company reported net income of $48.4 million, or $1.30 diluted EPS, and revenue of $221.9 million for the third quarter ended September 30, 2012.  The release stated in part:

> "Our sequential revenue growth of nearly 10% put us at the high end of the semiconductor group in terms of top line performance with smartphone and tablet PC demand remaining strong going into the fourth quarter.  This smartphone and tablet PC demand is well diversified with MagnaChip supplying about 50 unique products to 26 different customers," said Sang Park, MagnaChip Chairman and CEO.  "In addition to strong revenue growth, our Q3 gross margin was up 350 basis points sequentially and up 630 basis points since Q1 due to higher fab utilization and improved product mix shift."

51.     On November 6, 2012, MagnaChip filed with the SEC its Form 10-Q for the third quarter of 2012.  The Form 10-Q included the same results previously reported in the Company's November 1, 2012 press release and contained signed certifications by defendants Park and Sakai.  The Form 10-Q further attested that the financial information was accurate and disclosed any material changes to the Company's internal control over financial reporting.

52.     On January 30, 2013, MagnaChip issued a press release announcing its fourth quarter and full year 2012 financial results.  The Company reported net income of $125.3 million, or $3.38 diluted EPS, and revenue of $218.1 million for the fourth quarter ended December 31, 2012.  Additionally, the Company reported net income of $193.3 million, or $5.16 diluted EPS, and revenue of $819.6 million for the year ended December 31, 2012.  The release stated in part:

> "I am very pleased that we ended 2012 with revenue of $819.6 million dollars, up 6.1% from 2011 and outpacing the semiconductor industry, which declined 3.0% this year. While the macro environment remained weak, we have successfully aligned with the growing smartphone and tablet PC market, leveraged our strong relationships with blue chip customers, and delivered 30% more new products in 2012 from the previous year," said Sang Park, MagnaChip Chairman and CEO.  "I believe that this will help differentiate us from our competitors and allow us to perform better than the market in 2013.  Compared to the same quarter last year, Q4 revenue and gross margin maintained better momentum due to a successful mix shift of products and customers and improved utilization from our mixed business model. Our revenue and margin performance this quarter represents our eighth consecutive quarter of meeting or exceeding guidance."

53.     On February 22, 2013, MagnaChip filed with the SEC its Form 10-K for the year ended December 31, 2012.  The Form 10-K included the same results previously reported in the Company's January 30, 2013 press release and was signed by defendants Park, Sakai, Elkins, Klein,

1    Lee, Norby and Tavakoli.  The Form 10-K contained signed certifications by defendants Park and

2    Sakai.  The Form 10-K further attested that the financial information was accurate and disclosed any

3    material changes to the Company's internal control over financial reporting.

4             54.     On April 30, 2013, MagnaChip issued a press release announcing its first quarter

5    2013 financial results.  The Company reported a net loss of $7.4 million, or $(0.21) diluted EPS, and

6    revenue of $205.3 million for the first quarter ended March 31, 2013.   The Company further

7    provided its guidance for the second quarter of 2013, with revenue expected to be in the range of

8    $210 million to $220 million.  The release stated in part:

9              "Our first quarter revenue and margin performance was better than the same
       quarter last year because of the product mix and customer shift we have been making
10     which has enabled us to be better aligned with growing markets," said Sang Park,
       MagnaChip Chairman and CEO. "The March quarter is typically a weak quarter due
11     to seasonality and the post-holiday consumer spending slowdown.  However, in
       addition to normal seasonality we also experienced lower than anticipated demand
12     from the smartphone market. Despite these obstacles, we were able to achieve our
       financial guidance for the ninth consecutive quarter. Looking ahead, challenges still
13     remain and visibility is somewhat limited. However, we remain optimistic that the
       macro environment is starting to improve and that our business will return to normal
14     seasonal growth beginning in the second quarter."

15            55.     On May 3, 2013, MagnaChip filed with the SEC its Form 10-Q for the first quarter of

16   2013.  The Form 10-Q included the same results previously reported in the Company's April 30,

17   2013 press release and contained signed certifications by defendants Park and Sakai.  The Form 10-

18   Q further attested that the financial information was accurate and disclosed any material changes to

19   the Company's internal control over financial reporting.

20            56.     On July 30, 2013, MagnaChip issued a press release announcing its second quarter

21   2013 financial results.  The Company reported net income of $4.4 million, or $0.12 diluted EPS, and

22   revenue of $215.3 million for the second quarter ended June 30, 2013.  The Company additionally

23   provided its guidance for the third quarter of 2013, with revenue expected to be in the range of $215

24   million to $225 million.  The release stated in part:

25            "We delivered solid results in the second quarter. Revenue of $215.3 million
       dollars was up 4.9% sequentially and up 6.2% year-over-year. Gross margin of
26     33.0% was up 100 basis points compared to last quarter and up 200 basis points
       compared to Q2 of last year," said Sang Park, MagnaChip Chairman and CEO.
27     "We're excited that our effort to focus on fast growing markets with our expanding
       list of innovative partners has enabled us to deliver ten consecutive quarters of

28

meeting or exceeding our financial guidance, in spite of the recent soft demand from high-end smartphone makers."

57.     On this news, the Company's stock price increased $3.20 per share, or 18%, from $17.36 on July 30, 2013 to $20.56 per share on July 31, 2013.

58.     On August 5, 2013, MagnaChip filed with the SEC its Form 10-Q for the second quarter of 2013.  The Form 10-Q included the same results previously reported in the Company's July 30, 2013 press release and contained signed certifications by defendants Park and Sakai.  The Form 10-Q further attested that the financial information was accurate and disclosed any material changes to the Company's internal control over financial reporting.

59.     On October 21, 2013, the price of MagnaChip stock reached its Class Period high of $23.57 per share.  This stock-price inflation during the Class Period allowed Avenue Capital to sell more than 16.1 million shares of its MagnaChip stock at artificially inflated prices for gross proceeds of $232.675 million.

60.     On October 29, 2013, MagnaChip issued a press release announcing its third quarter 2013 financial results.  The Company reported net income of $46.7 million, or $1.24 diluted EPS, and revenue of $217.8 million for the third quarter ended September 30, 2013.  The Company provided its outlook for the fourth quarter of 2013, with revenue expected to be in the range of $193 million to $203 million.  The release stated in part:

> "We are pleased to have delivered results that met our financial guidance for the eleventh consecutive quarter. We met our revenue and gross margin guidance through a combination of product and customer diversification and the successful launch of a new product line for our Power Solutions Division," said Sang Park, MagnaChip Chairman and CEO.  "Our smartphone related revenue grew quarter-to-quarter due to the expansion of AMOLED display drivers in high-end smartphones and from an increase of sales to mid- to low-end smartphone customers."

61.     On January 27, 2014, MagnaChip issued a press release announcing the postponement of its fourth quarter 2013 earnings release and investor conference call "to provide additional time for the Company to complete its review of its financial results for the fourth quarter and full year 2013."

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 16 -

62.     As a result of this news, and Moody's issuance of a "credit negative" report on the Company, the price of MagnaChip stock dropped $1.41 per share, to close at $16.16 per share on January 28, 2014.

63.     On March 11, 2014, the Company issued a press release announcing that the Audit Committee of the Company's Board had commenced an internal review into MagnaChip's accounting practices and procedures with outside professional advisors, and had determined that the Company had incorrectly recognized revenue on certain transactions and as a result would be restating its financial statements.  Specifically, the Audit Committee found that revenue on these transactions was recognized when products were shipped to a distributor "but should have been recognized when the distributor shipped the product to the customer."  As a result, the Audit Committee stated that MagnaChip's financial statements for each of the fiscal years ended December 31, 2012 and December 31, 2011 and the quarters ended March 31, June 30, and September 30, 2012 and 2013, should no longer be relied upon.  The release stated in pertinent part:

> The Company expects that the primary impact of the correction of prior revenue recognition errors will be to recognize revenue on certain transactions in the periods in which the distributor ships the products to the end customer rather than the periods in which the products are shipped to distributors.  This correction is not expected to impact revenue generated from the Company's non-distributor customers.  The Company's internal review including a review of the practices and procedures that led to the errors, preparation of fourth quarter and full year 2013 financial statements and restatement of prior periods are not yet concluded, and the actual impact of the revenue recognition corrections and other matters that may arise from the ongoing internal review on the Company's prior and future financial results may vary materially.

> As a result of the preliminary findings of the ongoing internal review and restatement, management is continuing to assess the Company's disclosure controls and procedures and internal controls over financial reporting.  Nevertheless, management has concluded that one or more material weaknesses exist in the Company's internal controls over financial reporting and that, as a result, internal controls over financial reporting and disclosure controls and procedures were not effective.  As part of the ongoing internal review and restatement, new Chief Accounting Officer Jonathan W. Kim will work with the Company's outside professionals to review and make those changes to the control environment necessary to improve the procedures related to revenue recognition under US GAAP.

64.     On March 28, 2014, MagnaChip issued a press release announcing defendant Sakai's resignation from the Company, which stated: "Margaret Sakai has resigned as the Company's

1  Executive Vice President and Chief Financial Officer and from all other officer and director

2  positions with the Company and its subsidiaries, *effectively immediately*."

3        65.    On this news, the price of MagnaChip stock dropped $0.58 per share, or 4%, to close

4  at $13.94 per share.

5        66.    Subsequently, on May 20, 2014, MagnaChip issued a press release announcing Park's

6  resignation as Chairman and CEO "*effectively immediately*."

7        67.    As a result of this news, MagnaChip's stock price declined $0.44 per share, or 3.4%,

8  from $12.99 per share on May 20, 2014 to $12.55 per share on May 21, 2014.

9        68.    On August 12, 2014, MagnaChip filed a Form 12b-25 Notification of Late Filing with

10  the SEC stating that it was unable to file its Quarterly Report on Form 10-Q for the quarter ended

11  June 30, 2014 within the five-day extension period.  The filing stated:

12        **Update on Internal Review and Restatement**

13             As previously announced on March 11, 2014, the Audit Committee of the
   Company's Board of Directors has commenced an internal review into the
14   Company's accounting practices and procedures with outside professional advisors,
   and such internal review remains ongoing. The scope of the internal review now
15   includes, among other things, errors and adjustments related to revenue recognition,
   cost of goods sold, inventory and reserves, as well as related business practices, for
16   both distributor and non-distributor customers.

17             Due to the ongoing nature of the Company's internal review and restatement
   process, the Company cannot at this time provide an estimate of the individual or net
18   effect of these errors and adjustments for any given period, but currently expects that
   the impact of some of the adjustments on certain periods in the Restatement Periods
19   will be material. Company's management and its outside advisors continue to
   evaluate and review the various types of errors and adjustments that have been
20   identified as of the date of this report, and these adjustments are subject to change
   until the Company completes its restatement of its financial statements. In addition,
21   additional errors or adjustments may be identified prior to the completion of the
   restatement, some or all of which may be material to the Company's financial
22   statements.

23             The Company has made substantial progress on the restatement to date, but
   significant work remains, and the Company is currently unable to estimate when the
24   restatement and related SEC periodic reports will be completed at this time. Because
   the internal review is ongoing, the Company's ability to complete the restatement is
25   subject to a number of contingencies, including but not limited to any additional
   findings of the Audit Committee's internal review and whether additional accounting
26   errors and adjustments may be identified, the review and audit of the Company's
   annual financial statements by its independent auditor, and the number and
27   complexity of the periods covered by the restatement and the periodic reports that
   will be required to be filed with the SEC to reflect the restatement.

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                - 18 -

As a result of the foregoing, the Company does not expect that it will be in a position to complete the restatement and preparation of its second quarter 2014 financial statements and file its Quarterly Report on Form 10-Q within the 5-day extension period provided in Rule 12b-25(b).

69. On November 12, 2014, MagnaChip issued a press release announcing the completion of the Audit Committee's internal review of the Company's accounting practices and procedures. The Company identified specific illegal accounting practices in violation of Generally Accepted Accounting Principles ("GAAP"), including:

various manufacturing-related business practices that facilitated premature revenue recognition on unfinished goods, semi-finished goods, and inventory manufactured in advance that affected revenue and sales targets;

various sales practices that resulted in overstated revenue for particular reporting periods, including premature shipment of products to and pulled-in orders from distributors and customers at quarter end;

cash payments to certain vendors, using expense and capital expenditure accounts at the Company, that (i) the vendors used to purchase products from certain distributors; (ii) the distributors then paid to the Company for those products; and (iii) in turn were applied to aged accounts receivable;

various improper inventory reserve accounting, non-recurring engineering (NRE) accounting, warranty reserve accounting and capitalization of repair expenses as capital expenditures that affected gross margins;

improper allocations of selling, general, and administrative costs ("SG&A") that understated such costs and smoothed the SG&A-to-revenue ratio trend;

improper deferral of outsourcing and free sample expenses that smoothed expense trends;

improper revenue recognition on a gross rather than net basis for certain products and customers; and

various undisclosed business practices and related concessions for distributors and customers (including credit limit increases, payment term extensions, provision of free samples, future discounts, and stock rotations), with distributor and customer consent, that affected the Company's sales.

70. On February 12, 2015, MagnaChip issued a press release entitled "MagnaChip Completes Restatement of Financial Results – Company Files Quarterly Reports with Financial Results for First Three Quarters of 2014 – Files 2013 Annual Report Containing Financial Results for FY 2013, 2012 and 2011," which stated in part:

MagnaChip Semiconductor Corporation ("MagnaChip" or the "Company"), a Korea-based designer and manufacturer of analog and mixed-signal semiconductor products, today filed with the Securities and Exchange Commission (SEC) its Annual

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 19 -

Report on Form 10-K for the year ended December 31, 2013, which contains audited financial statements of the Company as of and for the years ended December 31, 2013, 2012 and 2011. In addition, MagnaChip filed its quarterly reports on Form 10-Q for the first three quarters of 2014.

"This is an important step forward for MagnaChip, and with the restatement behind us, we are fully focused on improving our operations and delivering value to our customers and shareholders," said YJ Kim, MagnaChip's interim Chief Executive Officer. "Our results for the first three quarters of 2014 show that we have challenges to overcome, but we believe that we are making the necessary changes to ensure that we have the right strategy, products, people and cost structure in place to better anticipate and serve the changing marketplace."

Jonathan Kim, interim Chief Financial Officer and Chief Accounting Officer, commented, "The management team and the Board are intensely focused on improving our internal controls, including our control environment and our corporate culture, to ensure that we have the right processes, people and financial discipline in place. We believe we have made solid progress to date, and we expect to fully address all of the material weaknesses in internal control over financial reporting described in our filings today by the end of 2015."

71.     Subsequently on February 12, 2015, after the market closed, MagnaChip filed its Annual Report on Form 10-K with the SEC for the fiscal year ended December 31, 2013, restating its financial results for fiscal years 2011, 2012, and the first three quarters of 2013, and finally disclosing the full extent of the restatement. The restatement was purportedly caused by a host of accounting errors, including revenue recognition, cost of goods sold, inventory reserves, capitalization, and expense recognition and allocation, including related business practices for distributors, non-distributor customers and vendors.

72.     Additionally on February 12, 2015, MagnaChip filed its Form 10-Qs for the first quarter ended March 31, 2014, the second quarter ended June 30, 2014 and the third quarter ended September 30, 2014. The Form 10-Qs contained signed certifications by Interim CEO Young-Joon Kim and Interim CFO Jonathan W. Kim. The Form 10-Qs further attested that the financial information was accurate and disclosed any material changes to the Company's internal control over financial reporting.

73.     As a result of this news, the price of MagnaChip stock plummeted $7.50 per share, to close at $7.52 per share on February 13, 2015, a one-day decline of nearly 50%.

74.     In fact, MagnaChip's financial statements and results were materially misstated for 2011, 2012 and the first three quarters of 2013. The restatement of these financial statements is

1   essentially an admission that the financial statements did not comply with relevant accounting

2   standards and that the misstatement was material.

3          75.    As a result of defendants' false statements, MagnaChip securities traded at artificially

4   inflated prices during the Class Period.  However, after the above revelations seeped into the market,

5   the Company's stock was hammered by massive sales, sending the Company's stock price down

6   68% from its Class Period high.

7                        **LOSS CAUSATION/ECONOMIC LOSS**

8          76.    During the Class Period, as detailed herein, the 1934 Act Defendants made false and

9   misleading statements by misrepresenting the Company's business and prospects and engaged in a

10   scheme to deceive the market and a course of conduct that artificially inflated the price of

11   MagnaChip securities and operated as a fraud or deceit on Class Period purchasers of MagnaChip

12   securities.  Later, when these defendants' prior misrepresentations and fraudulent conduct became

13   apparent to the market, the price of MagnaChip securities fell precipitously, as the prior artificial

14   inflation came out of the price over time.  As a result of their purchases of MagnaChip securities

15   during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*,

16   damages, under the federal securities laws.

17

18                  **APPLICABILITY OF THE PRESUMPTION OF RELIANCE**
                         **AND FRAUD ON THE MARKET**
19

20          77.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-

21   market doctrine in that, among other things:

22          (a)    Defendants made public misrepresentations or failed to disclose material facts

23   during the Class Period;

24          (b)    The omissions and misrepresentations were material;

25

26          (c)    The Company's stock traded in an efficient market;

27          (d)    The misrepresentations alleged would tend to induce a reasonable investor to

28   misjudge the value of the Company's securities; and

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 21 -

(e)     Plaintiff and other members of the Class purchased MagnaChip securities between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

78.     At all relevant times, the market for MagnaChip securities was efficient for the following reasons, among others:

(a)     MagnaChip stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, MagnaChip filed periodic public reports with the SEC; and

(c)     MagnaChip regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

## NO SAFE HARBOR

79.     Many (if not all) of defendants' false and misleading statements during the Class Period were not forward-looking statements ("FLS") and/or were not identified as such by defendants, and thus did not fall within any "Safe Harbor."

80.     MagnaChip's verbal "Safe Harbor" warnings accompanying its oral FLS issued during the Class Period were ineffective to shield those statements from liability.

81.     Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of MagnaChip who knew that the FLS was false. Further, none of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they

1   were not stated to be such assumptions underlying or relating to any projection or statement of future

2   economic performance when made.

3                                           **COUNT I**

4                              **For Violation of §11 of the 1933 Act**
5        **Against MagnaChip, the 1933 Act Defendants and the Underwriter Defendants**

6          82.     Plaintiff incorporates ¶¶1-81 by reference.

7          83.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, against

8    MagnaChip, the 1933 Act Defendants and the Underwriter Defendants.

9          84.     This Count does not sound in fraud.  All of the preceding allegations of fraud or

10   fraudulent conduct and/or motive are specifically excluded from this Count.  Plaintiff does not allege

11   that MagnaChip, the 1933 Act Defendants or the Underwriter Defendants had scienter or fraudulent

12   intent, which are not elements of a §11 claim.

13         85.     The Registration Statement for the 2/13 Offering was inaccurate and misleading,

14   contained untrue statements of material facts, omitted to state other facts necessary in order to make

15   the statements made not misleading, and omitted to state material facts required to be stated therein.

16         86.     MagnaChip is the registrant for the 2/13 Offering.  The defendants named in this

17   Count were responsible for the contents and dissemination of the Registration Statement.

18         87.     As issuer of the shares, MagnaChip is strictly liable to Plaintiff and the Class for any

19   misstatements and omissions.

20         88.     None of the defendants named in this Count made a reasonable investigation or

21   possessed reasonable grounds for the belief that the statements contained in the Registration

22   Statement were true and without omissions of any material facts and were not misleading.

23         89.     By reason of the conduct herein alleged, each defendant named in this Count violated,

24   and/or controlled a person who violated, §11 of the 1933 Act.

25         90.     Plaintiff acquired MagnaChip shares pursuant and/or traceable to the Registration

26   Statement for the 2/13 Offering.

27         91.     Plaintiff and the Class have sustained damages.  The value of MagnaChip common

28   stock has declined substantially subsequent to and due to these defendants' violations.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                    - 23 -

92.     At the time of their purchases of MagnaChip shares, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.  Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff filed this Complaint.  Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

**COUNT II**

**For Violation of §12(a)(2) of the 1933 Act Against MagnaChip,
the Officer Defendants, Avenue Capital and the Underwriter Defendants**

93.     Plaintiff incorporates ¶¶1-92 by reference.

94.     This Count does not sound in fraud.  All of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count.  Plaintiff does not allege that MagnaChip, the Officer Defendants, Avenue Capital or the Underwriter Defendants had scienter or fraudulent intent, which are not elements of this claim.

95.     By means of the defective Prospectus, defendants MagnaChip, the Officer Defendants, Avenue Capital and the Underwriter Defendants promoted and sold MagnaChip stock to Plaintiff and other members of the Class.

96.     The Prospectus contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above.  Defendants MagnaChip, the Officer Defendants, Avenue Capital and the Underwriter Defendants owed Plaintiff and the other members of the Class who purchased MagnaChip common stock pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  These defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

97.     Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired MagnaChip common stock.

98.     By reason of the conduct alleged herein, defendants MagnaChip, the Officer Defendants, Avenue Capital and the Underwriter Defendants violated §12(a)(2) of the 1933 Act.  As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased MagnaChip common stock pursuant to the Prospectus sustained substantial damages in connection with their purchases of the stock.  Accordingly, Plaintiff and the other members of the Class who hold the common stock issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their common stock to the defendants sued in this Count.  Class members who have sold their common stock seek damages to the extent permitted by law.

## COUNT III

### For Violation of §15 of the 1933 Act
### Against MagnaChip, Avenue Capital and the Officer Defendants

99.     Plaintiff incorporates ¶¶1-98 by reference.

100.    This Count is brought pursuant to §15 of the 1933 Act against MagnaChip, Avenue Capital and the Officer Defendants.

101.    This Count does not sound in fraud.  All of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count.  Plaintiff does not allege that MagnaChip, Avenue Capital or the Officer Defendants had scienter or fraudulent intent, which are not elements of this claim.

102.    Avenue Capital controlled MagnaChip at the time of the 2/13 Offering and directed MagnaChip to undertake the 2/13 Offering to facilitate Avenue Capital's stock sales.  The Officer Defendants were each control persons of MagnaChip at the time of the 2/13 Offering by virtue of their positions as directors and/or senior officers of MagnaChip.  The Officer Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or

officers and/or major shareholders of MagnaChip, including Avenue Capital.  MagnaChip controlled the Officer Defendants and all of MagnaChip's employees.

103.     Defendants MagnaChip, Avenue Capital and the Officer Defendants were each culpable participants in the violations of §§11 and/or 12(a)(2) of the 1933 Act alleged in the Counts above, based on their having signed or authorized the signing of the Registration Statement and having otherwise marketed and participated in the process which allowed the 2/13 Offering to be successfully completed.

**COUNT IV**

**For Violation of §10(b) of the 1934 Act and Rule 10b-5
Against MagnaChip and the Officer Defendants**

104.     Plaintiff incorporates ¶¶1-103 by reference.

105.     During the Class Period, MagnaChip and the Officer Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

106.     The defendants named in this Count violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     employed devices, schemes and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of MagnaChip securities during the Class Period.

107.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for MagnaChip securities.  Plaintiff and the Class would not have purchased MagnaChip securities at the prices they paid, or at all, if they had been

aware that the market prices had been artificially and falsely inflated by these defendants' misleading statements.

**COUNT V**

**For Violation of §20(a) of the 1934 Act**
**Against MagnaChip, Avenue Capital and the Officer Defendants**

108.    Plaintiff incorporates ¶¶1-107 by reference.

109.    Avenue Capital and the Officer Defendants acted as controlling persons of MagnaChip within the meaning of §20(a) of the 1934 Act.  By reason of the Officer Defendants' positions with the Company and Avenue Capital's and the Officer Defendants' ownership of MagnaChip common stock, Avenue Capital and the Officer Defendants had the power and authority to cause MagnaChip to engage in the wrongful conduct complained of herein.  MagnaChip controlled the Officer Defendants and all of its employees.  By reason of such conduct, these defendants are liable pursuant to §20(a) of the 1934 Act.

**CLASS ACTION ALLEGATIONS**

110.    Plaintiff brings this action as a class action on behalf of all persons who purchased or otherwise acquired MagnaChip publicly traded securities during the Class Period (the "Class"), including all purchasers of MagnaChip common stock pursuant and/or traceable to the shelf Registration Statement on Form S-3 (Registration No. 333-180695), including the final Prospectus dated February 6, 2013 contained therein, issued in connection with the Company's 2/13 Offering.

111.    Excluded from the Class are defendants and their families, the officers and directors and affiliates of the defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

112.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by MagnaChip or its transfer agent and may be notified of the pendency of

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                    - 27 -

1    this action by mail, using the form of notice similar to that customarily used in securities class

2    actions.

3          113.   Plaintiff's claims are typical of the claims of the members of the Class as all members

4    of the Class are similarly affected by defendants' wrongful conduct in violation of federal law as

5    complained of herein.

6          114.   Plaintiff will fairly and adequately protect the interests of the members of the Class

7    and has retained counsel competent and experienced in class and securities litigation.

8          115.   Common questions of law and fact exist as to all members of the Class and

9    predominate over any questions solely affecting individual members of the Class.   Among the

10   questions of law and fact common to the Class are:

11              (a)      whether defendants violated the 1933 Act and the 1934 Act;

12              (b)      whether statements made by defendants to the investing public omitted and/or

13   misrepresented material facts about the business and operations of MagnaChip;

14              (c)      whether – as to the 1934 Act claims only – defendants knew or deliberately

15   disregarded that their statements were false and misleading;

16              (d)      whether – as to the 1934 Act claims only – the price of MagnaChip common

17   stock was artificially inflated; and

18              (e)      to what extent the members of the Class have sustained damages and the

19   proper measure of damages.

20         116.   A class action is superior to all other available methods for the fair and efficient

21   adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the

22   damages suffered by individual Class members may be relatively small, the expense and burden of

23   individual litigation make it impossible for members of the Class to individually redress the wrongs

24   done to them.   There will be no difficulty in the management of this action as a class action.

25

26

27

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                  - 28 -

1                                                **PRAYER FOR RELIEF**

2        WHEREFORE, Plaintiff prays for judgment as follows:

3        A.     Determining that this action is a proper class action, designating Plaintiff as Lead

4 Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil

5 Procedure and Plaintiff's counsel as Lead Counsel;

6        B.     Awarding Plaintiff and the members of the Class damages, including interest;

7        C.     Awarding rescission or a rescissory measure of damages;

8        D.     Awarding Plaintiff's reasonable costs and attorneys' fees; and

9        E.     Awarding such equitable/injunctive or other relief as the Court may deem just and

10 proper.

11                                              **JURY DEMAND**

12        Plaintiff demands a trial by jury.

13 DATED: April 21, 2015                 ROBBINS GELLER RUDMAN
                                              & DOWD LLP

14                                       SHAWN A. WILLIAMS

15

16                                     *s/ Shawn A. Williams*

                                    SHAWN A. WILLIAMS

17

18                                     Post Montgomery Center
                                    One Montgomery Street, Suite 1800
                                    San Francisco, CA  94104

19                                     Telephone:  415/288-4545
                                    415/288-4534 (fax)

20

21                                     ROBBINS GELLER RUDMAN
                                     & DOWD LLP

22                                     SAMUEL H. RUDMAN
                                    MARY K. BLASY

23                                     58 South Service Road, Suite 200
                                    Melville, NY  11747

24                                     Telephone:  631/367-7100
                                    631/367-1173 (fax)

25

26

27

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 29 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID C. WALTON
DANIELLE S. MYERS
600 West Broadway, Suite 1800
San Diego, CA 92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

I:\Admin\CptDraft\Securities\Cpt MagnaChip.docx